*40 OPINION OF THE COURT
Wachtler, J.
The question on these appeals is whether the prosecutor’s statutory obligation to be ready for trial within six months after commencing a felony action against the accused (CPL 30.30, subd 1, par [a]) should be postponed when the felony complaint, the initial accusatory instrument, is dismissed because of the prosecutor’s inexcusable failure to prosecute.
In People v Haynes, the defendant was arrested on June 11,1977 and, the following day, was arraigned on a felony complaint. A felony hearing originally scheduled for June 27 was, at the People’s request, adjourned first to July 14 and then again to August 3. When the prosecutor was still unable to proceed with the hearing on that latter date, the court dismissed the felony complaint. However, on November 4, 1977 the defendant was indicted for the same offenses originally charged in the felony complaint. The defendant subsequently moved to dismiss the indictment pursuant to CPL 30.30 (subd 1, par [a]). At that point more than six months had elapsed since the filing of the original felony complaint.
In People v Osgood the defendant, arrested on June 1, 1977, was arraigned on a felony complaint the following day. At the People’s request the felony hearing scheduled for June 22 was successively adjourned to August 12, September 7, and September 26. On the latter date the court granted the People an additional adjournment of 30 days, noting that the case was being marked “final” against them. Nevertheless on October 26, the People were still unable to proceed with the hearing and the court dismissed the felony complaint. On December 23, 1977, the defendant was indicted for the same offenses. She was arraigned on February 21, 1978 and the case was adjourned to April 4 at which time she moved to dismiss relying on CPL 30.30 (subd 1, par [a]).
In each case the trial court granted the defendant’s motion to dismiss the indictment. Computing the statutory period from the filing of the felony complaint, the courts found that the People had not met their obligation of being ready for trial within six months of the commencement of *41 the criminal action, and had not provided any satisfactory excuse for the delay. In each case, however, the Appellate Division reversed, holding that the six-month period within which the People must be ready for trial should be measured from the date the indictment was returned whenever the felony complaint has been dismissed and the defendant has not been held for Grand Jury action. Noting that the motions to dismiss were made less than six months after indictment, the Appellate Division determined that the motions should be denied. The defendants have now appealed to this court.
At the heart of our difference with the dissenters is their apparent unwillingness to accept two pertinent facts. The first is that, while speedy trial principles unquestionably prompted the enactment of GPL 30.30, the Legislature, in supplanting the speedy trial rule promulgated by the Administrative Board of the Judicial Conference with its proposed specified time schedules, elected to rely for assurance of basic speedy trial rights on the enforcement of constitutional standards (CPL 30.20) and in addition accorded defendants the new statutory right to a dismissal if the People are not ready for trial within specified time limits (People v Brothers, 50 NY2d 413, 416-418). Thus, cited considerations with respect to the impact of dismissals on speedy trial rights while relevant, surely are not determinative with respect to the application of the ready trial statute. The second fact is that the ready trial statute, which establishes an elaborate and detailed scheme for computing the statutory period, makes allowance for exceptional circumstances and expressly provides for exclusion of certain periods (subd 4) or recommencement of the statutory period (subd 5) when a delay has been caused by the defendant, or is due to circumstances beyond the prosecutor’s control. However, the statute does not provide any dispensation, by way of exclusion or recommencement of the statutory period, when, as in the cases now before us, the felony complaint initiating a criminal action against the defendant is dismissed because of the prosecutor’s inexcusable delay.
It would, of course, be inconsistent, if not perverse, for the Legislature to provide that a statute, designed to insure *42 to the public diligent prosecution of criminal charges filed in court, should be suspended when the District Attorney has inexcusably delayed the prosecution of the case. Nor can it be said that dismissal of the felony complaint, which may only temporarily interrupt the prosecution, eliminates the adverse effects the delay may have on the defendant’s rights —which in this State has always been one of the prime objectives of the various statutes requiring prompt disposition of criminal charges (see, e.g., People v Prosser, 309 NY 353, 356; People v Johnson, 38 NY2d 271, 275-276). Despite the dismissal there is still the danger that the accused will lose witnesses or exculpatory evidence he may need if the prosecution is resumed. The fact that the defendant may not be “held” after the dismissal does not remove this type of risk. On the contrary, dismissal of the charge and release of the defendant may aggravate the problem by creating confusion or uncertainty as to whether the prosecution has dropped the case and, thus, whether there is any need to prepare or preserve a defense. Nor will this type of dismissal relieve the defendant of anxiety and public suspicion when, as here, the dismissal merely serves as an intermission in a prosecution to be resumed at some unannounced date. Indeed this additional uncertainty may well increase the defendant’s anxiety, and, once again, frustrate the legislative purpose.
Nevertheless the District Attorney urges that the statutory period recommenced when the indictment was returned, because it marked the commencement of a second criminal action. Although that result would be inconsistent with the purpose of the six-month ready rule prescribed in CPL 30.30,[1] the prosecutor argues that it is compelled by other sections of the CPL where the Legislature has defined a “criminal action” (CPL 1.20, subd 16), and the “commencement of criminal action” (CPL 1.20, subd 17).
*43 “A criminal action is commenced by the filing of an accusatory instrument against a defendant in a criminal court” (CPL 1.20, subd 17), which includes the filing of a felony complaint (CPL 1.20, subd 1). Thus in this case the filing of the felony complaint commenced a criminal action, and at that point the People incurred the obligation of being ready for trial within six months. The contention that the subsequent return of the indictment, after the felony complaint had been dismissed, commenced a separate criminal action is not compelled or supported by the terms of this statute which, on the contrary, expressly provides that “if more than one accusatory instrument is filed in the course of the action, it commences when the first of such instruments is filed.” We have only recently noted that the statute contemplates that “there can be only one criminal action for each set of criminal charges brought against a particular defendant, notwithstanding that the original accusatory instrument may be replaced or superseded during the course of the action. This is so even in cases such as this, where the original accusatory instrument was dismissed outright and the defendant was subsequently haled into court under an entirely new indictment” (People v Lomax, 50 NY2d 351, 356).
The District Attorney contends that this statement is overly broad. He notes that in Lomax the trial court had dismissed an indictment and had specifically granted the People permission to resubmit the charge to the Grand Jury, which by statute is “deemed to constitute an order holding the defendant for the action of a grand jury with respect to such charge” (CPL 210.45, subd 9). He claims, however, that when, as here, the defendant has not been held or deemed to be held for further proceedings after dismissal of the prior accusatory instrument, there can indeed be more than one criminal action for any set of criminal charges. This exception is said to be compelled by the fact that the Legislature in defining a criminal action (CPL 1.20, subd 16), stated that it includes “all further accusatory instruments directly derived from the initial one” (emphasis added) and also provided, according to the District Attorney, that it terminates with the final disposition of an accusatory instrument.
*44 The People take the position that an indictment may only be said to be “directly derived” from an earlier accusatory instrument when the defendant has been held for Grand Jury action as a result of the prior accusatory instrument. The term “directly derived”, however, is not defined anywhere in the CPL and thus there is no indication that the Legislature intended it to have any special meaning, or the peculiar meaning ascribed to it by the People. The ordinary meaning of the word “derive” is simply to “trace” or “originate” (see, e.g., Webster’s New World Dictionary) and realistically, the cases now before us can be traced to the felony complaints which originated the prosecution against these defendants for the same felonies now charged in the indictments. Certainly we are not precluded from giving a word its ordinary meaning when the Legislature has not seen fit to define it as a term of art.
Furthermore the statute defining a criminal action is more inclusive than the prosecutor’s analysis would seem to suggest. It goes on to provide that the criminal action also includes “all proceedings, orders and motions conducted or made by a criminal court in the course of disposing of any such accusatory instrument, or which, regardless of the court in which they occurred or were made, could properly be considered as a part of the record of the case by an appellate court upon an appeal from a judgment of conviction” (CPL 1.20, subd 16, par [b]). Here, of course, the felony complaint and the order dismissing it are part of the-record on appeal from the order dismissing the indictment. Since it would also be a part of the record if the defendant had been convicted following a denial of the motion to dismiss the indictment, it cannot be said that the complaint and the indictment are not part of the same criminal action.
Finally and most importantly, there is no support for the contention that the criminal action initiated by the filing of the felony complaint was completely terminated when the complaint was dismissed. The statute does not provide that a criminal action terminates with the final disposition of any accusatory instrument. Actually the statute states that the criminal action “terminates with the imposition of sentence or some other final disposition in a criminal court of *45 the last accusatory instrument filed in the case” (CPL 1.20, subd 16, par [c] [emphasis added]). Here the dismissal of the felony complaint may have finally disposed of the first accusatory instrument in the case. But as long as the District Attorney is free to continue the prosecution by obtaining an indictment, dismissal of the felony complaint cannot be said to have disposed of, finally or otherwise, the last accusatory instrument “in the case”.
In sum, the six-month ready rule was meant to eliminate unjustified delays and was not intended to provide rewards or incentive for delay. The prosecutor’s argument that the return of the indictment, after dismissal of the felony complaint for inexcusable delay in prosecution, commenced a new criminal action and renewed the six-month period, is inconsistent with that purpose and is not commanded by anything the Legislature has said.[2] There are, at best, what *46 the dissenter terms “indicia” or ambiguities, all of which can and should be interpreted in such a way as to carry out the legislative intent.
Accordingly, the orders of the Appellate Division should be reversed and the cases remitted to the Appellate Division for review of the facts, if any.

. The dissenter’s suggestion that the Legislature may have intended a “gap” in the prosecution in order to allow the People additional time to investigate when they discover a weakness in their case after having commenced the action, ignores the fact that CPL 30.30 (subd 4, par [g]) expressly authorizes a continuance for “exceptional circumstances, including but not limited to” loss of material evidence or the need for “additional time to prepare the people’s case”.

. Acceptance of the District Attorney’s position would undoubtedly produce confusion, mischief or anomalies in other areas.
For instance, the defendant’s right to counsel which attaches upon the filing of a felony complaint, thus precluding the police from questioning the defendant by acquiring a waiver of counsel in the absence of counsel (People v Samuels, 49 NY2d 218) would now arguably disattach once the felony complaint is dismissed or withdrawn by the police, thus permitting the defendant to be manipulated into his waiver of counsel where he is once again vulnerable to uncounseled questioning.
Any determination made in a suppression hearing prior to dismissal of a complaint (CPL 710.50, subd 1, par [b]) would apparently have no effect on the trial of the indictment which would be considered an entirely different criminal action.
In nonfelony cases the District Attorney’s argument would seem to completely undermine the readiness rule. In those cases, a dismissal of the accusatory instrument for failure to be ready for trial within the statutory period would not preclude the People from filing another accusatory instrument (compare CPL 170.30, with CPL 210.20, subd 4, prohibiting the People from obtaining another indictment when the prior indictment was dismissed for failure to comply with the readiness rule; see, also, CPL 210.20, subd 1, par [g]; CPL 30.30, subd 1). Under the prosecutor’s theory, the filing of the new accusatory instrument would commence a new criminal action renewing the statutory period, and allowing additional “renewals”, apparently without limit unless, as the dissent vaguely suggests, there is a showing of “bad faith” in addition to neglect. Thus in these cases there would be no fixed time limit and the readiness rule would simply be converted into a bad faith rule. It is no answer to say that the speedy trial provisions in other statutes and the Constitution will ultimately fix an outside limit. If the Legislature had found those provisions to be an adequate response to the problem of pretrial delay in the criminal courts, it would not have enacted CPL 30.30.